UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Andrew Roth | Thomas Gruenbeck | |

**Proceedings:** DEFENDANTS CHARLES MCDANIEL & SANDRA MCDANIEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50) (filed 05/13/08)

## I.     INTRODUCTION

On March 17, 1999, plaintiff Randy Wordell Bowen, an African-American, was attacked by a group of alleged white supremacist "skinheads" called "the Hammerskins" while attending a party in Temecula, California. On March 17, 2000, plaintiff filed suit against numerous defendants in connection with this attack. Among the defendants are the following six defaulting defendants who were convicted of felonies for their involvement in the attack: Gregory McDaniel, Alan Yantis ("Yantis"), Travis Miskam ("Miskam"), Jason McCully ("McCully"), Jesse Douglas ("Douglas"), and Daniel Butler ("Butler").

Plaintiff filed a second amended complaint on November 16, 2001, alleging the following claims: (1) conspiracy to violate civil rights, 42 U.S.C. § 1985(3); (2) violation of civil rights, Cal. Civ. Code § 52.1; (3) assault; (4) battery; (5) negligence; (6) intentional infliction of emotional distress; (7) negligent supervision of minors; and (8) negligence per se.

On August 16, 2007, following a seven-day trial, the jury reached a verdict in favor of plaintiff and against numerous defendants, including Charles McDaniel and Sandra McDaniel ("the McDaniels"), who are the parents of Gregory McDaniel. The jury found that the McDaniels conspired to violate plaintiff's federal constitutional rights in violation of 42 U.S.C. § 1985(3); that they conspired to interfere with plaintiff's rights because of his race, in violation of Cal. Civ. Code § 52.1; and that the McDaniels' acts or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

omissions caused plaintiff injury, harm, or damage.[1] The jury awarded plaintiff compensatory damages in the amount of $350,000.

On May 13, 2008, the McDaniels filed the instant motion for judgment as a matter of law. Plaintiff filed an opposition thereto on June 13, 2008. On June 20, 2008, the McDaniels filed a reply. A hearing was held on July 7, 2008. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

**II.   LEGAL STANDARD**

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 139, 149 (2000). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. Fed. R. Civ. P. 50(b). It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment. Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed.

---

[1] In contrast to the other defendants, the jury did not find that the McDaniels assaulted or caused another person to assault or commit a battery on plaintiff. Additionally, unlike the other defendants, the jury did not find that the McDaniels were liable for punitive damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (articulating the same standard in the context of a directed verdict). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995)). In other words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

## III. FACTUAL BACKGROUND

The following evidence was adduced at trial in support of plaintiff's claims.

Between 1996 and 1999, criminal street gangs known as "skinheads" operated in Temecula, California. Reporter's Transcript, Aug. 8, 2007 at 107:22-108:24. The term "skinhead" refers to a person who identifies as white and who believes that other races are inferior to the white race. Id. at 108:3-8.

In September 1996, Sergeant Jeffrey Kubel of the Riverside County Sheriff's Department ("Kubel") responded to an anonymous call regarding "skinhead activity" at the McDaniels' residence, located in Temecula, where Gregory McDaniel lived with his parents. Id. at 110:12-111:24. Outside of the residence, Kubel encountered Gregory McDaniel, Gary Kesterson ("Kesterson"), and Yantis, who identified themselves as "white supremacist skinheads." Id. at 114:4-15. These individuals and most of the other teenagers at the McDaniels' residence were wearing "traditional skinhead attire." Id. at 115:19-116:2.

The next evening, Kubel again went to the McDaniels' residence in response to a similar anonymous call, where he encountered Gregory McDaniel, Yantis, and Miskam, among other teenagers. Id. at 119:6-120:8. All but one of these individuals were wearing skinhead attire, including necklaces bearing the emblem of an iron hammer and a swastika. Id. at 120:15-21. Miskam had a tattoo of Adolf Hitler on his back in plain view. Id. at 124:4-17. Although none of the individuals at the McDaniels' residence was of legal drinking age, there were alcoholic beverages "everywhere," and Kubel believed that they were drinking alcohol when he arrived. Id. at 122:15-25. Kubel surmised that these individuals had been intimidating the neighbors based on the fact that the calls reporting their behavior were anonymous. Id. at 137:16-138:22

At that time, there was a criminal charge for assault pending against Miskam based on allegations that he and other persons involved in "white power" stabbed and hit someone with a baseball bat. Id. at 123:11-16.

Kubel's supervisor spoke with the McDaniels and informed them that they had come to the residence because of the skinhead activity occurring there and because there were minors drinking alcohol on the premises. Id. at 127:18-21. Kubel's supervisor also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

informed them that they were in danger of being arrested for contributing to the delinquency of a minor. Id. at 127:21-24. The McDaniels responded, in effect, that they "just wanted to provide a place for them that was safe to hang out, and they were good kids, [and] weren't doing anything wrong." Id. at 128:8-10.

Kubel's report in connection with one of the foregoing encounters at the McDaniels' residence states that "white supremacist skinheads have a common identifying hairstyle and common identifying clothing. They use common identifying Nazi signs and symbols and necklaces, tattoos and graffiti. They gather in one location, become intoxicated, loud and unruly. They intimidate neighbors through their numbers and through known violence and hatred toward certain groups." Id. at 140:10-20. Kubel had received special training regarding street gangs, his duties were largely focused on gangs, and he taught a high school class regarding gang awareness. Id. at 102:12-104:19.

Within a month of the foregoing encounters at the McDaniels' residence, Kubel learned that Miskam, Gregory McDaniel, and McCully assaulted an individual at a convenience store. Id. at 128:17-129:7.

Kesterson testified that in Winter of 1998 and early Spring of 1999, a group of individuals, including Gregory McDaniel, Kesterson, Miskam, McCully, Douglas, and Yantis spent time with one another inside the McDaniels' residence and drank alcohol. Reporter's Transcript, Aug. 10, 2007 at 156:15-23, 157:8-21. Sandra McDaniel was present at the residence on some of these occasions, and Kesterson met her there a number of times. Id. at 159:17-24. Kesterson felt "comfortable" spending time with the foregoing individuals at the McDaniels' residence. Id. at 160:7-10. Kesterson also met Charles McDaniel at the McDaniels' residence, and he was sometimes there when the foregoing individuals spent time there. Id. at 162:22-163:2. The McDaniels did not give these individuals a "hard time" when they spent time at their residence. Id. at 170:23-25.

In the Spring of 1999, Gregory McDaniel and Kesterson published a magazine called "Heathen Hammer," using the McDaniels' family computer. Id. at 153:6-154:18. This computer, which was the only computer in the house, was kept in the den room and was used by the entire family. Id. at 169:14-20. Gregory McDaniel was allowed to use the computer whenever he wanted. Id. at 169:25-170:2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

The attack on plaintiff occurred on March 17, 1999, at a large outdoor party, attended by approximately 200 persons. Reporter's Transcript, Aug. 8, 2007 at 170:3-171:13. As he was preparing the leave the party, and without provocation, plaintiff was struck on the head with a bottle by a man whom he did not know. Id. at 171:3-174:23. Plaintiff was chased by numerous persons who shouted racial epithets at him. Id. at 176:19-177:16. One person slashed plaintiff's back with a sharp object, causing a serious laceration. Id. at 178:12-181:1. During the attack, plaintiff also sustained injuries to his head and neck which required stitches. Id. at 192:11-13.

The day after the attack, sheriff's investigators observed that Gregory McDaniel had a tattoo of a German soldier on his shoulder blade, which they understood to represent his willingness to fight for the beliefs of his gang. Reporter's Transcript, Aug. 10, 2007 at 62:22-64:8. Gregory McDaniel also had a tattoo of the word "skinhead" on his stomach. Id. at 67:3-7. Additionally, Gregory McDaniel had a tattoo of a "crucified skinhead" on his leg. Id. at 65:12-25.

Sheriff's investigators later executed a search warrant at the McDaniels' residence. Id. at 50:25-51:21. In Gregory McDaniel's bedroom, investigators found many items indicating membership in a white supremacist street gang, including clothing and Heathen Hammer literature. Id. at 58:2-9. These items were not concealed in the bedroom. Id. at 58:15-16. Investigators also found literature relating to the chapter rules of the "Hemet chapter of the Western Hammerskins" in an unlocked box underneath Gregory McDaniel's bed. Id. at 60:11-61:4.

After the attack on plaintiff, Charles McDaniel acknowledged to a Sheriff's investigator that he knew about Gregory McDaniel's involvement with a skinhead gang called the Hammerskins. Id. at 96:24-97:13. Charles McDaniel also acknowledged to the Sheriff's investigator that Gregory McDaniel was involved "in a violent crime along with Travis Miskam as part of skinhead activity[.]" Id. at 97:11-16. Later, Charles McDaniel testified before a grand jury in the underlying criminal case that he was never aware that his son was involved in skinhead activities. Id. at 179:16-17. Charles McDaniel was aware that Gregory McDaniel had tattoos on his leg and shoulder. Id. at 178:8-179:3.

Sandra McDaniel testified to the grand jury that she was not aware that Miskam, Yantis, Douglas, Butler, or McCully were skinheads. Id. at 185:23-187:24. Miskam had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

a tattoo of the word "skinhead" on the back of his head.  Id. at 88:13-21.  Sandra McDaniel testified before the grand jury that she did not know what was tattooed on the back of Miskam's head.  Id. at 185:20-22.  Thereafter, when asked whether Miskam was a skinhead, she testified that "his head said it."  Id. at 187:1-3.  Later, when asked if she was aware that Miskam promoted white supremacy, she answered "no."  Id. at 187:1-11.  Sandra McDaniel was aware that Gregory McDaniel had a tattoo of "something on a cross" on his leg.  Id. at 188:2-6.

As of March 1999, members of the Hammerskins followed a custom and rule that forbade them from discussing Hammerskin business with non-members.  Id. at 75:23-76:6.

## IV.  DISCUSSION

It is well-settled that a claim under § 1985(3) -- the Ku Klux Klan Act of 1871 -- may reach private conduct.  Griffith v. Breckenridge, 403 U.S. 88, 101 (1971).  To maintain such a claim, a plaintiff must establish the following elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1537 (9th Cir. 1992).  The plaintiff must also show "some racial or perhaps other class-based motivation, Griffith v. Breckenridge, 403 U.S. 88, 102 (1971), and, if it is 'aimed at' the deprivation of a constitutional right, the right must be one secured not only against official infringement, but against private action as well."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993).

Cal. Civ. Code § 52.1 authorizes a plaintiff to bring a private civil action against any defendant who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ."  Cal. Civ. Code § 52.1(a) & (b).  An action under § 52.1 is "independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law . . ."  Cal. Civ. Code § 52.1(g).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

The parties do not dispute that many of the elements for plaintiff's § 1985(3) and § 52.1 claims have been satisfied. Undoubtedly, there was sufficient evidence to support the jury's findings that some persons agreed to act in concert with one another to inflict bodily harm upon plaintiff because of his race. See Griffith, 403 U.S. at 103 (allegations that the defendants, who were private citizens, had engaged in a racially-motivated attack on the plaintiffs were sufficient to support the requisite animus to deprive the plaintiffs of the equal enjoyment of legal rights because of their race in violation of § 1985(3)). The central question raised by the instant motion for judgment as a matter of law is whether sufficient evidence was adduced at trial to support the jury's finding that the McDaniels entered into the conspiracy to deprive plaintiff of rights protected by federal and California law. The Court finds and concludes that the evidence at trial was adequate, and therefore, the jury's verdict should not be disturbed.

### A. Civil Conspiracy

Under federal law, "[a] civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979) (quotations omitted). To establish the existence of a conspiracy, a plaintiff need not set forth evidence of an explicit agreement, but instead, may rely upon the showing that the "parties have a tacit understanding to carry out the prohibited conduct." LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) (quoting United States v. Rubin, 844 F.2d 979, 984 (2d Cir. 1988)); Hampton, 600 F.2d at 621 ("circumstantial evidence may provide adequate proof of conspiracy) (quotations omitted). "While it is not necessary to prove that each participant in a conspiracy know the exact parameters of the plan, they must at least share the general conspiratorial objective." Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. Cal. 1983); see also Hobson v. Wilson, 737 F.2d 1, 55 (D.C. Cir. 1984) ("The essence of a civil conspiracy is participation in a common and unlawful plan whose goals are known to all members -- even if all parties are not privy to each individual act taken in furtherance of the scheme."); Hampton, 600 F.2d at 621 ("A plaintiff seeking redress need not prove that each participant in a conspiracy knew the exact limits of the illegal plan or the identity of all of the participants therein.") (citations and quotations omitted). The Hampton court further elaborated,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

> [t]he participants in the conspiracy must share the general
> conspiratorial objective, but they need not know all the details
> of the plan designed to achieve the objective or possess the
> same motives for desiring the intended conspiratorial result.  To
> demonstrate the existence of a conspiratorial agreement, it
> simply must be shown that there was a single plan, the essential
> nature and general scope of which was known to each person
> who is to be held responsible for its consequences.

Hampton, 600 F.2d at 621 (quotations and citations omitted); see also Simmons v. Poe, 47 F.3d 1370, 1378 (4th Cir. 1995).  "Repetitive or parallel transactions may establish the existence of such a joint venture, but isolated instances, explicable without reference to a continuing or broader program, may not."  Hoffman-La Roche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971).

      Similarly, under California law, a claim for civil conspiracy requires that the following elements be met: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct.  Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1581 (1995).  "The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose."  Id. at 1582.  Moreover, "actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned tort must be combined with intent to aid in its commission."  Id.  Furthermore, "[w]hile knowledge and intent 'may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances, conspiracies cannot be established by suspicions.  There must be some evidence."  Id.

      Because there is rarely direct evidence of the existence of a conspiratorial agreement, "the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding' to achieve the conspiracy's objectives."  Hampton, 600 F.2d at 621 (quoting Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)).  "When a plaintiff alleges a conspiracy to violate civil rights, '[t]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide.'"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

Id. (quoting Adickes, 398 U.S. at 176 (Black, J., concurring)).

**B.   Analysis**

Plaintiff's theory at trial was that the McDaniels, along with members of a skinhead gang known as the Hammerskins, engaged in a conspiracy to deprive certain classes of non-white persons -- including African-Americans -- of their civil rights by, *inter alia*, engaging in acts of violence against them. This sort of conspiratorial objective is expressly provided for in § 1985(3), which applies to conspiracies directed at depriving "any person or class or persons of the equal protection of the laws." To show that the McDaniels entered into this conspiracy, plaintiff was required to adduce evidence tending to show either that the McDaniels agreed to support and engaged in acts in furtherance of the attack on an African-American person on a particular occasion or that they agreed to support and engaged in acts in furtherance of a group's shared goal of engaging in acts of violence against African-Americans. Although there was no evidence that the McDaniels agreed to the attack on plaintiff, there was sufficient evidence to support plaintiff's claim that the McDaniels agreed to support a group which generally advocated and engaged in randomized violence against non-whites, including African-Americans.

The evidence showed that skinhead groups such as the Hammerskins espouse white supremacist beliefs. Kubel testified that the skinhead group that he encountered at the McDaniels' residence, which included the McDaniels' son, Gregory McDaniel, and several other persons involved in the attack on plaintiff, had been intimidating persons in the neighborhood. Kubel's report also indicated that these individuals was known for their violence and hatred toward certain groups. Additionally, the evidence showed that one of the members of this skinhead group at the McDaniels' residence, Miskam, had recently been charged with a violent hate crime. These facts permitted the reasonable inference that the Hammerskins advocated and engaged in randomized violence against non-whites.

There was also evidence that the McDaniels were aware that the teenagers who regularly spent time at their house were members of the Hammerskins and that the McDaniels supported the violent goals of this group.

First, Kubel testified that the McDaniels were warned by the sheriff's department that the teenagers on their premises were engaged in skinhead activity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

    Moreover, there was evidence that the teenagers' involvement in a white supremacist group was obvious based on their appearance. Kubel testified that the teenagers he encountered at the McDaniels residence, several of whom were self-professed "white supremacist skinheads," wore typical skinhead attire, including necklaces adorned with swastikas. On one of his two visits to the McDaniels' residence, Kubel observed that Miskam had a tattoo of Adolf Hitler on his back in plain view. Additionally, Gregory McDaniel, who lived with his parents, had tattoos of the word "skinhead," a German soldier, and an image of a "crucified skinhead." Charles McDaniel admitted that he was aware of the tattoos on his son's shoulder and leg, while Sandra McDaniel admitted that she was aware of the tattoo on her son's leg.

    Although the McDaniels denied that they were aware of their son's involvement with a skinhead group and denied their own involvement with the Hammerskins, there was cause to doubt their credibility. Both of the McDaniels testified before the grand jury that they were unaware of Gregory McDaniel's involvement in skinhead activities. However, this testimony is belied by Kubel's testimony at trial that his supervisor confronted the McDaniels regarding the skinhead activities occurring on their premises, which involved their son. Likewise, the jury reasonably might have doubted the McDaniels' claimed ignorance regarding the involvement of their son and his friends in skinhead activities in light of the distinctive attire of these individuals, which Kubel testified was characteristic of skinhead gangs; the fact that some wore swastika necklaces; and the fact that their son and Miskam had prominently-displayed tattoos that obviously indicated a belief in white supremacy. Sandra McDaniel's credibility was also doubtful because she offered conflicting testimony before the grand jury, first stating that she did not know what was tattooed on the back of Miskam's head, then testifying that he had a tattoo of the word "skinhead" on the back of his head, and still later, testifying that she was unaware that Miskam promoted white supremacy. Based on these questions regarding their credibility, the jury reasonably could have discounted the McDaniels' claims of innocence and ignorance.

    Furthermore, the jury could have considered the foregoing questions regarding the veracity of the McDaniels' grand jury testimony as evidence that the McDaniels were participants in the alleged conspiracy. Generally, a conspiracy and a conspiracy to conceal an earlier, completed conspiracy are treated as two different conspiracies, and statements made in furtherance of the cover-up conspiracy are not admissible in evidence to demonstrate participation in or the acts of the first conspiracy. United States v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

DiDomenico, 78 F.3d 294, 303-04 (7th Cir. 1996). In this case, however, it was argued that the McDaniels participated in an ongoing conspiracy to engage in randomized violence against non-white persons through their involvement and participation with the Hammerskins. Therefore, the jury fairly might have construed any false testimony on the part of the McDaniels as their effort to protect Hammerskin members from criminal liability, and thereby, to help preserve the goals of the conspiracy. Moreover, the jury might have concluded that the McDaniels provided false testimony before the grand jury in keeping with the prohibition among Hammerskin members that they not discuss Hammerskin business with non-members.

The evidence also supported the jury's inference that the McDaniels engaged in acts in furtherance of the conspiracy by providing aid and comfort to members of the Hammerskins. The evidence showed that the McDaniels regularly allowed skinhead members to conduct "skinhead activities" on their premises, where they were permitted to illegally consume alcohol. One of these members, Kesterson, testified that he felt comfortable at the McDaniels' residence while spending time with other members of the Hammerskins and that the McDaniels did not give them a "hard time." Additionally, the evidence showed that the McDaniels' residence and computer was used to publish a skinhead magazine, Heathen Hammer.

In their motion, the McDaniels argue that other evidence adduced at trial supported their theory that the McDaniels were no more than parents whose son participated in skinhead activities in spite of their best efforts to guide him in the right direction. During oral argument, counsel for the McDaniels noted that the jury heard evidence that the McDaniels had placed Gregory McDaniel in counseling in an effort to correct his behavior. The McDaniels further contend that there is no evidence that the McDaniels personally espoused white supremacist views.

In essence, the McDaniels ask the Court to weigh the evidence and to issue a verdict in their favor. However, that is not the role of a court in deciding upon a motion for judgment as a matter of law. The foregoing discussion illustrates that there were genuine issues of material fact regarding the McDaniels' participation in a conspiracy in violation § 1985(3) and § 52.1, which precludes the granting of the instant motion. Accordingly, the McDaniels' motion for judgment as a matter of law is DENIED.

**V.    CONCLUSION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

# CIVIL MINUTES - GENERAL

| Case No. | EDCV-00-163-CAS (JWJx) | Date | July 7, 2008 |
|---|---|---|---|
| Title | RANDY WORDELL BOWEN v. HAMMERSKIN NATION; ET AL. | | |

In accordance with the foregoing, the Court DENIES the McDaniels' motion for judgment as a matter of law.

IT IS SO ORDERED.

|  |  | 00 | : | 18 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |